```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOHN B. NIKITUK, ET AL., | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil No.07-3808 (JBS/KMW) |
| v. | |
| TIMOTHY LIEZE, ET AL., | **OPINION** |
| Defendants. | |

APPEARANCES:

Gregg L. Zeff, Esq.
FROST & ZEFF, ESQS.
Pier 5 at Penn's Landing
7 North Columbus Boulevard
Philadelphia, PA 19106
    Counsel for Plaintiffs

Walter B. Dennen, Esq.
AIMINO & DENNEN, LLC
40 Newton Avenue
Woodbury, NJ 08096
    Counsel for Timothy Lieze

George E. Pallas, Esq.
Jonathan A. Cass, Esq.
Nella M. Bloom, Esq.
COHEN, SEGLIAS, PALLAS & GREENHALL, PC
2 White Horse Pike
Haddon Heights, NJ 08035
    Counsel for Anthony P. Lieze and Anthony P. Lieze Trash
    Removal

Allan E. Richardson, Esq.
915 Haddon Ave.
Collingswood, NJ 08108
    Counsel for South Jersey Check Cashing, LLC, Eugene McNelis,
    and Michelle McNelis Lieze.

**SIMANDLE**, District Judge:

I. **INTRODUCTION**

This matter is before the Court on motions for summary judgment by Defendants South Jersey Check Cashing, LLC (SJCC), Eugene McNelis, Michelle McNelis Lieze [Docket Item 31]; Anthony P. Lieze Trash Removal (ALTR) and Anthony P. Lieze [Docket Item 32]; and Timothy Lieze [Docket Item 33].  The principal issues to be decided are the preclusive effects of a state court summary judgment opinion related to this matter and the extent to which Plaintiffs have adduced support for their federal RICO claim. For the reasons described below, the Court will grant summary judgment for all Defendants on the federal RICO claims, deny Plaintiffs' request for a continuance to allow further discovery, and decline to exercise jurisdiction over the remaining state law claims.

II. **BACKGROUND**

This case involves a business relationship gone bad. Timothy Lieze's father, Anthony P. Lieze, owns a trash removal firm (ALTR), for which Timothy Lieze worked as a truck driver. During his employment with ALTR, Timothy Lieze discovered an opportunity to haul metal waste from Camden County Energy Recovery Corporation (CCERC), a firm with which ALTR had a long-

2

running relationship.  According to Timothy Lieze, his neighbor, Plaintiff John Nikituk, agreed to buy the appropriate truck and go into a metal hauling business together under the name East Coast Waste Services (ECWS).  According to Nikituk, Timothy Lieze simply offered the opportunity to Nikituk without the expectation of an interest in ECWS.  Nikituk invested significant resources in ECWS with the expectation of being employed as the exclusive remover of metal waste from CCERC.

ECWS hauled metal waste from CCERC for over a year.  At some point, ALTR also began hauling metal waste from CCERC, an action that Plaintiffs allege violated their exclusive right to haul the waste.  In 2005, Timothy Lieze discovered that John Nikituk did not consider him a partner in ECWS, and upon Timothy Lieze's urging, CCERC gave the hauling rights to ALTR.  In this action, Plaintiffs allege that Timothy Lieze first induced Nikituk to invest resources in ECWS by telling Nikituk that he would be the exclusive hauler of metal waste from CCERC, and then Timothy and Anthony Lieze through ALTR usurped the role of ECWS in removing metal waste from CCERC.[1]

Plaintiffs' arguments were initially brought as counterclaims in a state court action initiated by Timothy Lieze, <u>Lieze v. East Coast Waste</u>, Docket No. GLO-L-1590-05 (N.J. Sup.

---

[1] The Plaintiffs in this case include Nikituk, ECWS, and ECWS LLC.  ECWS and ECWS LLC are not alleged to be separate entities; the business was simply renamed.  (Compl. ¶ 5.)

Ct. L. Div. 2008).  In that action, Timothy Lieze contended that he was a fifty-fifty partner with Nikituk in ECWS, and demanded an accounting and damages in contract and quantum meruit.[2]  The state court defendants countered that Timothy Lieze was not, and indeed legally could not be partner because of his criminal history, and brought the state law claims reiterated in the present case.

At some point during discovery in the state court case, Nikituk learned that checks belonging to ECWS had been cashed, allegedly without his authorization.  The checks were cashed at SJCC, a business operated by Eugene McNelis, the father of Michele McNelis Lieze, who is the wife of Timothy Lieze and is also employed at SJCC.  The state court defendants attempted to amend their counterclaims to include SJJC, McNelis, and Michele McNelis Lieze and to add a federal RICO count to the state RICO claim against the defendants already joined in the state court action.  This amendment was denied by the state court because the state court defendants failed to show the basis for the new claim and because it was too late in the litigation.  (Def. Timothy Lieze Br. Supp. Summ. J., Ex-C.)

Three weeks later, on August 13, 2007, Plaintiffs filed the present action, with a complaint that is nearly identical to the

---

[2]  In the state court action, Plaintiffs in this case were defendants.  Bonnie L. Nikituk was also a defendant in state court, but is not a plaintiff in this case.

4

proposed amended complaint that had been rejected in the Superior Court action.

All of the claims in the state court action except the claim for conversion were decided on summary judgment in April 2008. In a letter opinion of April 30, 2008, the Superior Court, by the Honorable Anne McDonnell, found that Timothy Lieze did not have a partnership interest in ECWS.  (Def. Timothy Lieze Br. Supp. Summ. J., Ex-G.)  Judge McDonnell also found that the Nikituk's RICO and tortious interference claims were without merit, in part because "[t]here was no metal contract and there was no exclusivity."  (Id.)  The only remaining claim, Nikituk's allegation that Timothy Lieze unlawfully converted ECWS' funds by cashing checks and keeping the proceeds, is proceeding to trial in state court and has not yet been adjudicated.

In their summary judgment motions in this action, the defendants in the state court action (Anthony P. Lieze, ALTR, and Timothy Lieze) move for summary judgment on the merits, arguing that Plaintiffs have not adduced evidence to support the RICO claims, and assert claim and/or issue preclusion.  The new defendants (SJCC, Eugene McNelis, and Michelle McNelis Lieze), argue that Plaintiffs have not provided facts sufficient to support their RICO, negligence, and conversion claims against these Defendants.

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

When a federal action is brought subsequent to a state court adjudication of the same or similar claims, a threshold question is whether the Rooker-Feldman doctrine prevents the court from having subject matter jurisdiction over the claim.[3] As its name suggests, the doctrine derives from the Supreme Court's opinions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-84 (1983). The basic idea of the doctrine is that a federal district court cannot entertain what is functionally an appeal from a state court decision because the power to hear such appeals is reserved for the United States Supreme Court. See 28 U.S.C. § 1257 (2006) (allowing appeal from state court decisions to the United States Supreme Court).

In 2005, the Supreme Court addressed the scope of the doctrine in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005). In Exxon, the Supreme Court was concerned with what it saw as the overuse of the Rooker-Feldman doctrine when ordinary principles of preclusion and abstention should be applied. Exxon, 544 U.S. at 1521-22. The Supreme Court

---

[3] Although neither party raised the issue of subject matter jurisdiction, the Court must consider the issue sua sponte. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 420 (3d Cir. 2003).

6

emphasized that, "Rooker-Feldman doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Id.

Prior to Exxon, this Court would have been required to find that it lacked subject matter jurisdiction because of the holding of ITT Corp. v. Intelnet Intern., 366 F.3d 205 (3d Cir. 2004). In that case, prior to initiating a federal RICO action, the defendant had raised substantially similar claims in a state court case by means of a motion to amend its pleadings. Id. at 207. The state court denied the motion on the grounds that it failed to state a claim and that it was unduly late. Id. at 209. The court held, "If the state court's denial of [a party's] motion to amend its pleadings was 'with prejudice,' and therefore on the merits, the Rooker-Feldman doctrine precludes [the party] from filing substantially the same claims in the federal courts by withholding jurisdiction from those courts." Id.

But Exxon's requirement that the plaintiff be "complaining of injuries caused by state-court judgment," has been interpreted by the Third Circuit Court of Appeals to create a strict requirement that the injury must exist solely as the result of the state court judgment. See Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (citing

7

Holt v. Lake County Bd. of Com'rs, 408 F.3d 335 (7th Cir. 2005) (injury was eviction ordered by state court)). Since the injury complained of in ITT Corp. (and the present case) was independent of the state court's decision, Exxon overruled ITT Corp. and prevents application of the Rooker-Feldman doctrine to the case at bar.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 arising from the federal RICO claims asserted herein. Whether the Court will exercise supplemental jurisdiction under 28 U.S.C. § 1367 over related state law claims is discussed below in Part III.E.

### B. Preclusive Effect of State Court Proceedings on Federal RICO Claims

Claim preclusion bars the litigation of claims that should have been raised as part of the same cause of action in some prior action. It requires there to be a final judgment on the merits in a prior suit involving the same parties or their privies and a subsequent suit based on the same cause of action. Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991).[4]

---

[4] The preclusive effects of a state court decision are determined by the preclusion law of that state. See, e.g., Del. River Port Auth. v. Fraternal Order of Police, Penn-Jersey Lodge 30, 290 F.3d 567, 573 (3d Cir. 2002). The federal law of preclusion does not vary substantially from New Jersey state law, except in one respect. The Entire Controversy Doctrine is a New Jersey state law doctrine that is a form of claim preclusion with a slightly broader scope, but the same basic elements as

8

Issue preclusion "requires of a previous determination that (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  U.S. v. 5 Unlabeled Boxes, 572 F.3d 169, 173 (3d Cir. 2009) (internal quotations and citations omitted).

The Superior Court's determination on summary judgment that the facts presented in the state case were not sufficient for a state-law RICO claim does not preclude this federal RICO claim outright under either claim or issue preclusion because each argument for preclusion is missing a critical element.  The grant of partial summary judgment cannot have claim preclusive effect because, unlike issue preclusion, claim preclusion requires a final judgment.  In re Brown, 951 F.2d 564, 569 (3d Cir. 1991) (distinguishing issue preclusive effects of partial summary judgment from claim preclusive effects).[5]

---

traditional claim preclusion.  See generally Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883 (3d Cir. 1997).  The only relevant difference is that, unlike ordinary claim preclusion in which the unit of analysis is those claims that should have been brought in a single "cause of action," under the Entire Controversy doctrine, "a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action."  In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008).

[5] The denial of the amendment of the counterclaims to include a federal RICO claim is also not preclusive.  The denial was made on the alternative bases that the moving party did not

The ruling on summary judgment is not issue preclusive as to the federal RICO claim as a whole because the issue of whether the facts are sufficient for a state law RICO claim and the issue of whether the facts are sufficient for a federal law RICO claim are not identical. The texts of the state and federal statutes are different and they have different legislative histories, resulting in slightly different interpretations of the relevant elements upon which the Superior Court decided the issue. See State v. Ball, 661 A.2d 251, 258 (N.J. 1995) ("[I]n many respects our Legislature departed from the federal example."). Additionally, some of the facts in this complaint with respect to the allegedly unauthorized check cashing were not present in the state counterclaims.

However, the Superior Court did determine with respect to the question of interference with the hauling contract that "[t]here was no metal contract and there was no exclusivity," and "Lieze Trash had a right to pursue their own financial interest." (Def. Timothy Lieze Br. Supp. Summ. J., Ex-G.) This determination was made after actual litigation of the identical issue raised here and was necessary to the rejection of the

---

show a basis for the claim and that it was untimely. Such determinations made in the alternative carry no preclusive effect. See Arab African Intern. Bank v. Epstein, 958 F.2d 532, 537 (3d Cir. 1992); Restatement (Second) of Judgments § 27, cmt. i.

tortious interference claim.  Plaintiffs are therefore foreclosed from re-raising this issue now.

Thus, while the proceedings in the state court do not fully preclude the claims brought against the Lieze Defendants in this action, the issue of whether there was an exclusive contract for ECWS to haul metal has been determined and the Court will examine the federal RICO claims in light of that determination.

### C. Summary Judgment as to Federal RICO Claims

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.

Under the federal RICO statute, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, as well as an injury resulting from the conduct constituting a violation.  Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc., 87 Fed. App'x 227, 232 (3d Cir.

2003) (internal citations and quotations omitted).  Proof of an enterprise requires "(1) proof of an ongoing organization, (2) proof that the associates function as a continuing unit, and (3) proof that the enterprise is an entity separate and apart from the pattern of activity in which it engages." United States v. Console, 13 F.3d 641, 650 (3d Cir. 1993) (internal citations and quotations omitted).  "To plead sufficiently the requisite pattern of racketeering activity, a RICO plaintiff must allege predicate acts that are related and amount to or pose a threat of continued criminal activity." Bonavitacola, 87 Fed. App'x at 232 (internal citations and quotations omitted).  Continuity can be either open-ended or close-ended, "referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." H.J., Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 241 (1989). "For closed-ended continuity, a RICO plaintiff must allege a series of related predicates lasting a substantial period of time.  For open-ended continuity, the plaintiff must allege a threat of continuity that exists when the predicate acts are a part of defendant's regular way of doing business." Bonavitacola, 87 Fed. App'x at 232-33 (internal citations and quotations omitted).  Plaintiff alleges close-ended continuity based on the period of time elapsed between Timothy Lieze offering him the hauling job and the time when the checks were

12

cashed at SJCC. Plaintiffs allege that the predicate acts of Defendants were the repeated violation of the wire fraud statute, 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1) (listing § 1343 as an act of racketeering). The wire fraud statute applies to:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice that involves the use of wire or other electronic communications.

18 U.S.C. § 1343 (emphasis added).

Plaintiffs' evidence supporting their federal RICO claim includes:[6] Nikituk's testimony that Timothy Lieze convinced him to buy a truck to haul waste from CCERC (Nikituk Dep. 34:3-35:12); Timothy Lieze's testimony that he caused CCERC to terminate its relationship with ECWS upon learning that he was not considered a partner (which involved Michele Lieze sending a fax to ECWS on August 15, 2005) (Timothy Lieze Dep. 217:10-221:25); Nikituk's testimony that checks were cashed at SJCC without his authorization (which involved transmission of wire communications between March and May 2005); and the fact that

---

[6] The Court assumes arguendo that the complaint alleges one conspiracy involving all defendants, since that reading of the complaint makes the strongest case for RICO violation. To the extent the complaint was intended to allege two separate conspiracies, it makes an even weaker case for each conspiracy and would be dismissed for the same reasons discussed below.

Lieze and/or ALTR removed some metal from CCERC to which Nikituk believed he had been promised exclusive hauling rights (Pl.'s Br. Opp. Summ. J., Ex-E).

This evidence is insufficient to support a federal RICO claim for several reasons. The most basic reason is that there is no evidence of any activity that meets the definition of "racketeering activity" contained in 18 U.S.C. § 1961(1). The first alleged predicate act is the Lieze Defendants' removal of waste from CCERC, which Plaintiffs allege was somehow fraudulent because of their exclusive contract to do so. However, the Superior Court already decided that Plaintiffs had no such contract. And even if this argument were not issue precluded, the alleged action would not constitute a predicate act of racketeering under the RICO statute because it is not alleged to involve wire or mail fraud.

Similarly, the alleged termination of the contract at Timothy Lieze's urging is not an act of racketeering. First, the Superior Court stated that there was no contract for the exclusive hauling of metal. Second, even if the state court's determination were not binding, there is no evidence suggesting the kind of fraud or misrepresentation required by 18 U.S.C. § 1343. Instead, what is alleged is, at most, tortious interference with a contract, which is not an act of racketeering. <u>Annulli v. Panikkar</u>, 200 F.3d 189, 192 (3d Cir.

1999) overruled on other grounds by Rotella v. Wood, 528 U.S. 549 (2000).  And third, the only connection to wire or mail fraud is the transmission of a facsimile, and Plaintiffs do not allege that it was an interstate transmission as required under the statute.  Id. at 200 n.9.

The remaining allegations of acts of racketeering are those related to the check cashing.  The Court assumes without deciding that the fraudulent cashing of a check involves the kind of interstate wire transmissions required by 18 U.S.C. § 1343.  However, Plaintiffs provide no evidentiary support for the allegation that McNelis and Michelle Lieze's cashing of the checks was fraudulent or otherwise meets the requirements for racketeering, and that it was not simply a mistake as a result of Timothy Lieze's apparent authority to cash them or alternatively the Defendants' good faith belief that Nikituk had authorized the cashing himself.  The only evidence Plaintiffs offer on the claims with regard to check-cashing is Nikituk's testimony that he did not authorize the cashing of the checks, his testimony that he did not receive the proceeds, and the observation that the Defendants' accounts about the cashing are divergent with respect to matters other than Defendants' belief that the cashing of the checks was proper.  McNelis testified, and there is no evidence to suggest otherwise, that Nikituk and Lieze referred to each other as business partners and that McNelis had no reason to

15

doubt Timothy Lieze's authority to cash the checks. (Dep. of Eugene McNelis, 49:10-24; 54:17-60:19.)

But even if the cashing of the checks was a fraudulent scheme that meets the requirements for predicate acts of racketeering, because the other alleged acts fall short of those requirements, Plaintiffs cannot prove the kind of continuity necessary to support a RICO claim.  Recall that close-ended continuity requires "a series of related predicates lasting a substantial period of time." Bonavitacola, 87 Fed. App'x at 232-33 (internal citations and quotations omitted).  The check cashing happened over a period of only a few months, and though the length of the period is not the sole factor, in this case the other elements of continuity do not convince the Court that these few months of activity constitute close-ended continuity. See Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995); Emcore Corp. v. Price Waterhouse Coopers LLP, 102 F.Supp.2d 237 (D.N.J. 2000).

In short, there is no evidence that would allow a reasonable jury to return a verdict for Plaintiffs on the federal RICO count.  Summary judgment will be granted to all Defendants on that count.

**D. Plaintiff's Request for a 56(f) Continuance**

In their brief opposing summary judgment, Plaintiffs argue that "at this time Plaintiffs do not have sufficient facts to

16

prove their cases in their entirety," and request additional time for discovery. (Pl.'s Br. Opp. Summ. J., at 16.) They do not frame this request as a motion pursuant to Fed. R. Civ. P. 56(f), but that is presumably the relief they seek. Requests for continuance pursuant to 56(f) are to be granted "almost as a matter of course" when "affidavits have been filed, setting forth specific reasons why the moving party's affidavits in support of a motion for summary judgment cannot be responded to, and the facts are in the possession of the moving party." Mid-South Grizzlies v. NFL, 720 F. 2d 772, 779-780 (3d Cir. 1983).

Here, Plaintiffs attach no such affidavit. Nor do they set forth the facts they seek from the moving party. Plaintiffs merely state that "[f]urther discovery is required to prove that the Defendants carried out their threats of destroying Plaintiffs' business," and they therefore seek "the deposition of South Jersey's Fed R. Civ. Pro. 30(b)(6) deposition." The Court is not inclined to grant a continuance in the absence of an affidavit, and will certainly not do so where there is no indication of any specific facts sought by Plaintiffs.

Moreover, in this two-year-old case, Plaintiffs have had ample opportunity to obtain discovery of all relevant evidence. The time for completing discovery expired pursuant to the Scheduling Order of January 22, 2009 on February 27, 2009. Further delay to obtain discovery of unspecified nature, after

17

the discovery period has elapsed, is not warranted under Rule 56(f) or under the Court's inherent authority to manage its docket.

### E. State law claims

The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  That statute provides that "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).  "In deciding whether to retain jurisdiction over pendent state law claim following dismissal of federal claims, a district court should consider generally accepted principles of judicial economy, convenience, and fairness to litigants."  Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993).

The Court will decline the exercise of supplemental jurisdiction because neither the Court nor the parties have expended significant resources on these claims yet (the present motion is the first in the case and the parties have not sought extensive discovery); the operative facts underlying the claims are currently the subject of the ongoing litigation in the New Jersey Superior Court action preceding this one; and because the complete lack of evidence supporting the claims upon which

federal jurisdiction was premised suggest to the Court that there is no unfairness to Plaintiffs in declining to exercise supplemental jurisdiction over the state law claims. Indeed, although preclusion does not apply in this case, permitting state court litigants to bring state claims on which they have lost summary judgment into federal court for what is functionally an appeal is a waste of judicial resources and contrary principles of comity.

### IV. CONCLUSION

Plaintiffs have offered no evidence that these Defendants committed the predicate acts necessary to find federal RICO violations, and the principles of comity, efficiency, and fairness dictate that the Court dismiss the remaining state law claims. The accompanying Order is entered.

**December 22, 2009**        **s/ Jerome B. Simandle**
Date                         JEROME B. SIMANDLE
                             United States District Judge

19